**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re:<br>**Mark D. Hill & Barbara C. Hill,**<br>    **Debtors.** | §<br>§<br>§<br>§ | **Case No. 04-42452-H1-7**<br>**(Chapter 7)** |
| In re:<br>**Michael T. Heer & Maria D. Heer,**<br>    **Debtors.** | §<br>§<br>§<br>§ | **Case No. 04-42130-H1-7**<br>**(Chapter 7)** |

## <u>MEMORANDUM OPINION</u>

This Memorandum Opinion is jointly entered for the above captioned cases.  The two cases each involve a motion to dismiss pursuant to 11 U.S.C. § 707(b).  For the reasons stated below, the United States Trustee's Motion to Dismiss in *In re Hill* [docket no. 12] is granted. For the reasons stated below, the United States Trustee's Motion to Dismiss in *In re Heer* [docket no. 11] is granted.

### Hill Background

Mark D. Hill and Barbara C. Hill (collectively, the "Hills") filed a petition under chapter 7 on September 2, 2004.  On December 6, 2004, the United States Trustee filed a Motion to Dismiss pursuant to 11 U.S.C. § 707(b).  The Hills filed a response to the Motion to Dismiss on December 27, 2004, and the Court held an initial hearing on January 26, 2004.  Additional hearings were held on the Motion to Dismiss on March 23, 2005 and April 14, 2005.

The Hills testified that they filed bankruptcy due to a judgment awarded against them by Stonewood Administrative Services ("Stonewood") for $60,375.[1]  The judgment stems from a damages award for attorneys' fees Stonewood incurred defending a suit originally brought by the Hills.  The Hills spent roughly $22,000 on their own attorneys' fees and costs associated with the Stonewood-related litigation.

Ms. Hill is employed by AT&T in commercial communication sales.  Ms. Hill earns a base salary of $88,737 plus commissions.  Her commissions in 2004 totaled about $54,000, bringing her aggregate gross income to about $142,737.  While in her current position at AT&T, Ms. Hill's primary account has been with Textron.  Textron issued AT&T a termination notice in 2004.  The contract is now terminated, and the "windup" period is set to be completed by July 10, 2005.  Ms. Hill's commissions are largely dependent on her account with Textron.  She has experienced a 10 percent reduction in commissions for March, 2005, and believes her commissions will continue to drop through the windup period with Textron.

AT&T is also in the process of merging with SBC Communications Inc.  Ms. Hill testified that the company has announced a 12 percent post-merger workforce reduction.  Ms. Hill believes that her future employment at AT&T depends on finding a new client to replace the Textron account.  She has so far been unable to find any new clients.  In anticipation of losing her position at AT&T, Ms. Hill has retained a company for education and consulting to assist her in outplacement and to improve her job skills.

---

[1]  While the Stonewood judgment—at $60,375—was by far the largest unsecured nonpriority debt the Hills scheduled, they scheduled $104,822.24 of unsecured debt, with the remainder being roughly $45,000 in credit card debt.

Mr. Hill is employed by Pay Centers—a company that provides electronic commerce capabilities to the "under-banked community."[2]  Pay Centers is a start up and has thus far been unable to secure adequate funding to continue its operations.  The company informed Mr. Hill that he will not be receiving a paycheck for April, 2005.  It appeared from Mr. Hill's testimony that all future paychecks are uncertain at this time.  As of the close of the evidentiary hearing, Mr. Hill had not yet missed a paycheck.

At the hearing on this matter, the parties comprehensively reviewed the various expenses Debtors listed on Schedule J.  While a full review of the Hills' expenses is not necessary, certain expenses carry particular significance to the Court.  In total, the Hills scheduled their monthly expenses at $13,382.22.

Both Mr. And Ms. Hill incurred unreimbursed business travel expenses.  According to their Schedules, they incurred anywhere from roughly $2,820 to $3,600 per month in combined unreimbursed travel expenses.  Of these totals, about 85 percent of the expenses were incurred by Mr. Hill.  Mr. Hill also pays for the cellular telephone he uses for business purposes, but this amount is contained in their scheduled utilities total.

The Debtors started multiple retirement accounts around 1996.  At filing, the accounts had a combined value of roughly $58,000.  The Hills make combined monthly deposits of $300 into the retirement accounts.  Ms. Hill testified that she and Mr. Hill have made consistent payments each month into these accounts, and that those amounts did not increase during the year preceding their filing.  Ms. Hill maintains a 401(k) plan with AT&T—with a scheduled current market value (at filing) of $60,489.52.  Ms. Hill also maintains a life insurance policy

---

[2] According to Mr. Hill's testimony, the "under-banked community" is the roughly 30 percent of the population without a bank account.  Pay Centers attempts to install ATM-like devices in businesses like grocery and convenience stores where they believe their target community shops.

with Mr. Hill as the beneficiary.  The policy is valued at roughly $23,000, and Ms. Hill pays $1,875 quarterly to maintain the policy.

At filing, the Debtors scheduled three automobiles: a 2002 Mercedes, a 1999 Mitsubishi Montero Sport XLS, and a 1991 Porsche 911 Carrera.  The Debtors testified that the Mercedes had been surrendered and the Mitsubishi Montero was destroyed in an accident.  The Debtors used roughly $10,000 in insurance proceeds from the destroyed Mitsubishi to purchase a 2002 Cadillac Escalade for $34,000—financing the remaining $24,000 at $477 per month on a five-year note.  The Porsche 911 Carrera is inoperable and in need of an engine overhaul and other substantial repairs estimated at anywhere from $6,000 to $10,000.  The Porsche was inoperable when the Debtors filed, and the debt secured by the Porsche was reaffirmed with Capital One at $547 per month through May, 2006.  As of the hearings held on the Trustee's Motion to Dismiss, the Escalade was the Debtors' only operable vehicle, which they currently share.

The Debtors' homestead is approximately 2,800 square feet and valued at roughly $380,000.  Monthly mortgage payments are $1,591, excluding taxes and insurance.  They spend an additional $725 each month on utilities.  The Court specifically notes that the Debtors scheduled monthly cable and internet payments of $285.

### Heer Background

Michael T. Heer and Maria D. Heer (collectively, the "Heers") filed a petition under chapter 7 on August 27, 2004.  On November 8, 2004, the Debtors filed Amended Schedules B & C.  On December 14, 2004, the United States Trustee filed a Motion to Dismiss pursuant to 11 U.S.C. § 707(b).  The Heers did not file a response.  On July 22, 2005, the Court held a hearing on the Motion to Dismiss and directed the Heers to appear.  The Heers failed to appear in person or through counsel.

The Debtors' original Schedule B (personal property) does not list any interests in an IRA, ERISA, Keogh, or other pension or profit sharing plan. Debtors' Amended Schedule B, however, lists a 401(k) plan with a current market value of $16,745 (at date of filing). The 401(k) plan brings the Debtors' Schedule B total to $62,395. The 401(k) plan listed in Amended Schedule B is only for Mr. Heer, through his employment at Mohawk Industries, Inc. Mr. Heer makes monthly contributions of $333.25 into the 401(k) plan. The Debtors have also borrowed $1,500 from the 401(k)—repaying the loan in monthly installments of $41.83.

The Heers scheduled gross annual earnings at $75,576, and a combined net monthly income of $4,537. The Heers have $3,788 in total monthly expenditures, leaving their monthly disposable income at $749. The Trustee states that, over 36 months in a hypothetical chapter 13 plan, the Heers would pay a 35 percent dividend to their unsecured creditors including student loan debt, or a 45 percent dividend to unsecured creditors excluding student loan debt. The Heers scheduled a total of $69,259 in unsecured nonpriority claims. Under the current chapter 7 filing, the Heers' unsecured nonpriority creditors would receive nothing.

### Section 707(b)

Section 707 governs dismissals in cases filed under chapter 7. Section 707(b) states:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

5

11 U.S.C. § 707(b).  Thus, § 707(b) requires: (i) that the debts are primarily consumer debts, and (ii) that granting relief would be a substantial abuse of the provisions under chapter 7.  These factors, however, should be analyzed using "a 'totality of the circumstances' approach in determining whether a motion under § 707(b) should be granted."  *In re Rathbun*, 309 B.R. 901, 904 (Bankr. N.D. Tex. 2004); *In re Rubio*, 249 B.R. 689, 695 (Bankr. N.D. Tex. 2000).

Legislative history suggests that Congress enacted § 707(b) in an effort to deny chapter 7 relief to the dishonest or non-needy debtor.  *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989) (citing *In re Walton*, 866 F.2d 981, 983 (8th Cir. 1989)).  Thus:

> In determining whether to apply § 707(b) to an individual debtor … a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether his is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets.

*In re Krohn*, 886 F.2d at 126.

In considering whether a debtor is "needy," courts consider whether the debtor has sufficient disposable income to fund a plan under chapter 13.  *In re Koch*, 109 F.3d 1285, 1288 (8th Cir. 1997).  Section 1325(b)(2) defines "disposable income" as any income "received by the debtor and which is not reasonably necessary to be expended … for the maintenance or support of the debtor or a dependent of the debtor."  11 U.S.C. § 1325(b)(2).

Courts have considered whether voluntary 401(k) contributions should be considered in determining a debtor's disposable income.  Some courts have likened the 401(k) analysis to earlier analyses of payments into ERISA accounts.  In considering payments into ERISA accounts, one court held that "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their retirement fund while at the

6

same time paying their creditors less than a 100% dividend." *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991).

The same reasoning has been applied equally to 401(k) and IRA contributions. *See, e.g., In re Behlke*, 358 F.3d 429, 435 (6th Cir. 2004); *In re Dehart*, 195 F.3d 177, 180-81 (3d Cir. 1999). Consequently, there is an "overwhelming consensus among bankruptcy courts that debtor's voluntary payment into pension, savings, or 401(k)-type plan is not a reasonably necessary expenditure," and therefore must be included in a debtor's disposable income under § 1325(b)(2). *In re Heffernan*, 242 B.R. 812, 818 (Bankr. D. Conn. 1999); *see also In re Austin* 299 B.R. 482, 486-87 (Bankr. E.D. Tenn. 2003); *In re Keating*, 298 B.R. 104, 110-11 (Bankr. E.D. Mich. 2003).

Nonetheless, this Court rejects a *per se* rule that bars all such contributions. Payments into a retirement account can be an important aspect of a debtor's overall financial health and stability. The Court takes this into consideration as part of the totality of the circumstances analysis. The age of the debtor, the monthly contribution, and the level of savings already accumulated in the account, are among the aspects personal to each debtor that must be considered in determining whether payments into retirement accounts should be included in disposable income. *See, e.g., In re Mills*, 246 B.R. 395, 401-02 (Bankr. S.D. Cal. 2000).

### Consumer Debts

Section 101(8) defines "consumer debt" for purposes of § 707(b). Debts acquired by an individual for a personal, family or household purpose are consumer debts under § 101(8). 11 U.S.C. § 101(8). The Fifth Circuit has held that whether a debt was acquired for personal, family or household purposes rests on whether it was incurred with an eye for profit. *In re Booth*, 858

F.2d 1051, 1055 (5th Cir. 1988); *In re Logan*, 2003 Bankr. LEXIS 600, at *3 (Bankr. N.D. Tex. June 17, 2003).

## Substantial Abuse

Section 707(b) does not define "substantial abuse."  The Fifth Circuit has not decided what constitutes a substantial abuse under § 707(b).  Bankruptcy Courts in the Fifth Circuit have adopted the Sixth Circuit "totality of the circumstances" standard, as set forth in *In re Krohn*, 886 F.2d at 126.[3]  *See, e.g., In re Rathburn*, 309 B.R. at 904; *In re Fergason*, 295 B.R. 96 (Bankr. S.D. Tex. 2003).  As discussed above, an analysis of substantial abuse under *Krohn* ultimately rests on either lack of honesty or want of need.  *In re Krohn*, 886 B.R. at 126.

In reviewing *Krohn* and subsequent cases, it is clear that the "honesty"-prong is backwards looking and the "need"-prong is forward looking.  Aspects to consider in evaluating a debtor's honesty include the reason for the bankruptcy filing—such as unforeseen circumstances or catastrophic events—the debtor's candor and good faith in his filings, his presence before the court, and whether the debtor engaged in eve of bankruptcy purchases.  *See In re Rathburn*, 309 B.R. at 904.  In considering the debtor's need, courts examine a variety of factors, including:

> the debtor's ability to repay debts out of future earnings; whether the debtor enjoys a stable source of future income; whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code; whether there are state remedies with the potential to ease his financial predicament; the degree of relief obtainable through private negations; and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id.* at 904-05 (citing *In re Krohn*, 886 F.2d at 126-27).  If a trustee can satisfy the burden under either prong, the case should be dismissed pursuant to § 707(b).

---

[3] This test also incorporates the approaches used in the Ninth and Fourth Circuits.  *See, e.g., In re Kelly*, 841 F.2d 908 (9th Cir. 1988); *In re Green*, 934 F.2d 568 (4th Cir. 1991).

**Hill Analysis**

The Hills' Memorandum of Law argues that only 36 percent of the debts to be discharged are consumer debts.  However, as the Trustee points out, the stipulations signed and filed by the Debtors and the Trustee state that the debts to be discharged in this case are primarily consumer debts.  As the Debtors stipulated to the nature of their debts to be discharged, the Court need not revisit the issue here.  The debts to be discharged by the Hills are held to be primarily consumer debts as defined by § 707(b).  The Trustee has therefore satisfied the first element of the § 707(b) analysis as to the Hills.

As to the second element, the Trustee must establish substantial abuse as defined by § 707(b).  Under the *Krohn* test, this would require a showing of either lack of honesty or want of need.  *In re Krohn*, 886 F.2d at 126.  In considering honesty, the Court looks back to the Hills' conduct prior to filing and the filing itself.  The reason for the Hills' filing is not dishonest.  It is clear that the Debtors have concerns over the Stonewood judgment and the unstable nature of their employment into the foreseeable future.  These constitute unforeseen circumstances and do not suggest a dishonest intent in filing.  With respect to candor and good faith, the Court considers the Debtors' testimony and filings to be honest and forthright.  The Trustee has not alleged any misrepresentations associated with the Debtors' filing, and the Court sees none.  Further, there is no evidence of eve of bankruptcy purchases.  Ms. Hill testified that they had not increased their retirement account contributions prior to bankruptcy, and that increases in charitable contributions are only an attempt to bring their contributions back to the level prior to the incurring legal expenses associated with the Stonewood litigation.  The Hills are not erratic spenders, and there is no evidence of any unusual purchases made prior to filing.  Consequently, the Trustee fails to satisfy the burden as to lack of honesty.

Despite this conclusion, the Court must also evaluate the Hills' case under the "want of need" prong. The Hills' projected monthly spending totals $13,382.22. Their projected combined monthly income totals $13,635.59. The Debtors are clearly not living a lifestyle such that a reduction in expenses would deprive the Hills of "adequate food, clothing, shelter and other necessities." *In re Rathburn*, 309 B.R. at 904-05. Rather, each month the Hills spend $285 on cable and internet, $350 on electricity and heating, and $500 on food. Their charitable contributions—$1,263—account for nearly 10 percent of their total monthly expenses. However, the Hills have budgeted charitable contributions in excess of the amounts they have been contributing. In the present case, the Hills have significant room for reduction in expenses without affecting expenses on food, clothing, shelter, or other necessities.

As discussed, the Hills both hold jobs with unpredictable futures. It is unclear how many months Mr. Hill may work without receiving a paycheck. Ms. Hill may be unable to find a replacement client at AT&T, which may result in unemployment for an indefinite period of time. The evidence before the Court indicates that the Hills do not have substantial job security. Many variables were discussed at the hearing—all with unpredictable outcomes. In the end, the Court is left to rely on the Hills' analyses of their job outlook. The Court heard a great deal of testimony on the issue, but is nonetheless under the belief that actions speak louder than words. The reaffirmation agreement on an inoperable vehicle requiring substantial work and the Hills' present budget for discretionary expenditures evidences a belief by the Debtors that their income stream is not at great risk of significant long-term reduction. These actions are a powerful indicator of the Hills' state of mind.

The Debtors signed the reaffirmation agreement on the Porsche 911 Carrera with Capital One Auto Finance on December 6, 2004. It is undisputed that the Porsche is inoperable and in

10

need of perhaps $10,000 in repairs.  Under the terms of the reaffirmation agreement, the Debtors are to make monthly payments of $547.28 effectively beginning September 13, 2004 and concluding May 6, 2006.  The 19 payments will total $10,398.32 if made according to schedule. The monthly payments on the inoperable vehicle exceed the Debtors' monthly food expenditure.

Consequently, the Court believes that the Hills have a relatively stable source of future income and a substantial ability to repay debts out of future earnings.  The Hills' creditors should receive some payment if the Hills are to spend over $1,100 per month on recreation and entertainment, increase their charitable contributions, and spend $285 per month on cable and internet.  In considering the totality of the circumstances, the Hills are not needy debtors entitled to relief under chapter 7.  Therefore, the Trustee has met his burden as to want of need under the *Krohn* test.  The case will be dismissed unless the Hills elect to convert the case to a case under chapter 13.  The case will be dismissed if no conversion is filed within 20 days.

### Heer Analysis

As stated above, a Motion to Dismiss under § 707(b) requires: (i) that the debts are primarily consumer debts, and (ii) that granting relief would be a substantial abuse of the provisions under chapter 7.  A review of the Schedules and Statements filed in this case indicates that the Heers' indebtedness consists primarily of consumer debts.  Thus, the Court need only consider whether a substantial abuse exists.

The Trustee's Motion to Dismiss focuses almost entirely on Mr. Heer's 401(k) plan.  The Trustee argues that the Heers should not be permitted to commit $333.25 in discretionary monthly 401(k) contributions while paying nothing to unsecured creditors.  The Trustee argues that, at filing, Mr. Heer's 401(k) plan was valued at $16,745—a substantial amount considering that Mr. Heer was born in 1973 and Ms. Heer in 1977.  The Motion to Dismiss states:

11

> The UST is of the opinion that the Debtors must include in their disposable
> income the amount of their voluntary 401(k) plan contributions for the purpose of
> section 707(b) analysis because voluntary 401(k) plan contributions are not
> reasonably necessary to be expended for the maintenance or support of the
> Debtors or a dependent of the Debtors.

[Docket no. 11 at 4].

Further, the Trustee argues that the 401(k) loan repayments should not be deducted when calculating disposable income for purposes of § 707(b), as the loan is due to mature in 2005. The Trustee claims that these repayments are not reasonably necessary to be expended for the maintenance or support of the Debtors or a dependent of the Debtors—a requirement for deducting an expense from disposable income.

In considering the lack of honesty prong of the *Krohn* test, no dishonesty is alleged. The Court held a hearing on this matter but the Heers failed to appear. The Debtors' filing appears honest and candid, and the Trustee's motion does not allege any lack of honesty on the part of the Debtors. Thus, as to the Heers, § 707(b) cannot be satisfied under the lack of honesty analysis of the *Krohn* test.

Practically speaking, § 707(b) is used to dismiss chapter 7 cases that are more appropriately filed under chapter 13. Thus, want of need under the *Krohn* test looks to want of need under chapter 7. Whether a debtor can successfully file under chapter 13 is an important consideration. In the Motion to Dismiss, the Trustee alleges that the Debtors have adequate income to fund a chapter 13 plan if they ceased making monthly payments into the 401(k) plan. Such a hypothetical plan could yield a significant return to general unsecured creditors. The Heers do not describe any increase or decrease in income of more than 10 percent on their Schedules. In review of the petition and filings, the Court has no reason to believe that the Debtors will not enjoy a steady stream of future income.

12

Using the Debtors' disposable income calculated from Schedules I & J, the Trustee argues that the Heers would pay a 35 percent dividend to unsecured creditors over the life of a 36-month plan under chapter 13.  If the student loan debt listed is deducted, the dividend would increase to 45 percent over 36 months.

Mr. and Ms. Heer are both employed.  Together, they earn $4,537 and support a young child.  Nearly 70 percent of their monthly expenses go to housing, food, and two automobiles.  These are not abusive debtors leading an extravagant lifestyle.  Nonetheless, the Court must consider whether the Heers' expenses can be reduced significantly without depriving them of adequate food, clothing, shelter, or other necessities.  The Trustee argues that one such significant reduction is Mr. Heer's $333.25 voluntary monthly 401(k) contributions.  In considering the totality of the circumstances, the Court takes into account the age of the Debtors, the amount already accumulated in their retirement accounts, and the sum of any voluntary monthly payments.  The Heers are in their late 20s to early 30s.  Mr. Heer's 401(k) account already maintains a substantial balance.  Mr. Heer contributes nearly as much into his 401(k) account as he spends each month on food.  Such decisions are personal and perfectly valid.  However, chapter 7 debtors anticipating no dividend to unsecured creditors are effectively making retirement account contributions with general unsecured creditors' money.

In considering 401(k) contributions under *Krohn*'s need analysis, courts are suspicious of any size contribution if creditors are to receive less than a 100 percent dividend.  *See In re Jones*, 138 B.R. at 539.  Here, the Heers expect no dividend to unsecured creditors while contributing substantial amounts to the retirement account.  The Court reviews this under the totality of the circumstances.  If the Heers were near retirement, for instance, or the contributions were minimal, the Court might come to a different conclusion.  *See, e.g., In re Mills*, 246 B.R. at 401-

13

02.  Importantly, the Heers did not answer the Trustee's Motion to Dismiss or appear at the July 22, 2005 hearing.  The Court therefore makes the present determination in reliance on the Trustee's motion.  The facts alleged in the Trustee's motion, however, are not indefensible.  Had the Heers answered the motion or appeared at the hearing, the Court may have taken additional facts into consideration—thereby changing the totality of the circumstances and perhaps the ultimate decision.

In considering the Heers' filings and the Trustee's Motion to Dismiss, the Court finds that the Heers' filing indicates a substantial abuse pursuant to § 707(b).  Further, the Heers violated an order of this Court by failing to appear at the July 22, 2005 hearing.  Accordingly, the Court finds cause to dismiss this case with prejudice pursuant to 11 U.S.C. § 349(a).  Consequently, this case is dismissed under § 707(b) with prejudice against refiling for 180 days.  A separate Order of Dismissal accompanies this Memorandum Opinion.

### Analyses of the Cases under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

The vast majority of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (S. 256, 109th Congress (2005)) ("the Act") does not take effect until October 17, 2005—including changes to § 707.  Nonetheless, in order to create a complete appellate record, the Court evaluates whether the present cases would produce different results in the Act.  Although the Act's revisions to § 707(b) are not binding until October 17, 2005, the Court examined the results under the Act to determine if this decision produced results that would be inequitable to either the Hills or the Heers.  The results would not change under the Act for the Hills and the Court finds no inequity to them.  The result for the Heers is ambiguous.  Nonetheless, the Court finds it significant that no abuse would be presumed as to the Heers when evaluating their case

14

under the § 707(b) means test in the Act.  Taking into account the totality of the circumstances, the Court nevertheless finds that the Heers' case must be dismissed.

As explained below, the Act does not displace current § 707(b) jurisprudence.  *See* 11 U.S.C. § 707(b)(3).[4]  Rather, the Act expands the basis for dismissal through a highly detailed means test for determining whether abuse is presumed.  *Id.*  Much of the discussion surrounding the new Act warns that adding the means test makes the revised § 707(b) substantially more restrictive than the current law, and will force large numbers of chapter 7 debtors into chapter 13 (this prediction is often made particularly ominous by falsely stating that chapter 13 does not allow debtors to discharge debts).[5]  The true effect of the changes to § 707(b) remains to be seen. However, if the present cases are any indication, the Act may result in far fewer debtors being forced into chapter 13 than the ubiquitous warnings suggest.[6]

---

[4] Unless otherwise indicated, all cites in this opinion to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 do not become effective until October 17, 2005.

[5] *See, e.g.*, Tom Taulli, *What Bankruptcy Reform Means for You*, The Motley Fool, May 25, 2005, *available at* http://www.fool.com/news/mft/2005/mft05052516.htm ("Under the new law, Chapter 7 will be harder for people to elect….'The means test will mean a massive increase in the number of Chapter 13 filings,' said Aaron Malo, a partner at the law firm Sheppard Mullin."); Benny L. Kass, *Means Test, Counseling Requirement Lead a Host of Bankruptcy Changes*, Washington Post, April 23, 2005, at F3, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2005/04/22/AR2005042200879.html ("It will no longer be as easy to erase your debts under the bankruptcy law President Bush signed this week."); Lorene Yue, *Bankruptcy Reform Bill to Toughen Consumers' Climb Out of Debt*, Chicago Tribune Online Ed. (On the Money), March 27, 2005, *at* http://www.chicagotribune.com/business/yourmoney/sns-yourmoney-0327onthemoney,0,7793643,print.story ("Consumers looking for a fresh start by declaring bankruptcy will face tougher tests to get their debts erased when Congress completes action on the federal bankruptcy reform bill….If your income exceeds your state's annual household median…and you can make payments of at least $100 a month for a period of five years, you'll be forced to seek Chapter 13 status, which restructures your debts but does not erase them."); *A Test of Means…Or a Mean Test?*, Consumer Affairs, April 2005, *at* http://www.consumeraffairs.com/news04/2005/bankruptcy_act02.html ("In a manner reminiscent of ChexSystems, the inflexible standard [of the means test] is designed to leave no leeway for debtors to abuse the system, but in the process it is bound to penalize a great many people who have fallen into bad circumstances through no fault of their own."); CCH Bankruptcy Reform Act Briefing: Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, *Bankruptcy Overhaul Clears Congress—New Rules for Bankruptcy Implemented*, Apr. 15, 2005, at 1-2, *available at* http://www.cch.com/bankruptcy/Bankruptcy_04-21.pdf ("At the heart of the Act is the 'means test,' designed to force those debtors who have the ability to pay some of their debts into Chapter 13 as opposed to liquidating under Chapter 7….The Act lowers the 'substantial abuse' standard for dismissal or conversion to one of simple abuse.").

[6] Business Wire, *LexisNexis Bankruptcy Expert: What Next?; Editor-in-Chief of Collier on Bankruptcy Projects on New Legislation*, April 19, 2005, *available at* http://www.findarticles.com/p/articles/

To begin, it is important to note terminology changes between the current and the revised § 707(b).  Current § 707(b) uses the term "substantial abuse"—while revised § 707(b) evaluates whether granting relief under chapter 7 would be "an abuse."  Current § 707(b) essentially stops there.  Section 707(b) under the Act, however, adds substantial analysis to the determination of "an abuse."  The Court now reviews these additions step-by-step.

Under the Act, debtors are not evaluated under the means test if their current monthly income is below the median income for that household size in that state.[7]  11 U.S.C. § 707(b)(7). Otherwise, when an appropriate motion to dismiss or convert is filed under § 707(b), courts must analyze the case under the specific provisions in the Act.  A court must first take the debtor's current monthly income and reduce that income by various expenses determined under three subsequent clauses: § 707(b)(2)(A)(ii), (iii), and (iv).  Once reduced, this figure is multiplied by 60.  11 U.S.C. § 707(b)(2)(B)(iv).  At this point, abuse is presumed if the adjusted figure is not less than the lesser of either (i) 25% of the debtor's nonpriority unsecured claims (or $6,000 if that 25% is less than $6,000) or (ii) $10,000.

Put another way, a debtor can file chapter 7 if his income less expenses times 60 is less than $6,000.  A debtor cannot file chapter 7 if his income less expenses multiplied by 60 is greater than $10,000.  If the income less expenses multiplied by 60 is between $6,000 and $10,000, the net result must be less than 25% of the nonpriority unsecured claims in order to

---

mi_m0EIN/is_2005_April_19/ai_n13631444 ("Henry J. Sommer, Esq. is editor-in-chief of Collier on Bankruptcy, the nation's preeminent treatise in the bankruptcy field….Sommer projects: …Perhaps only 1 to 2 percent of people filing for Chapter 7 will fail the bill's means test."); William R. Davis Jr. and R. Glen Ayers Jr., *Bleeding Them Dry; New Bankruptcy Bill is Punitive, Pointless*, Texas Lawyer, April 25, 2005, at 46, vol. 21, no. 8 ("The avowed purpose of the bill is to force those who can pay into Chapter 13...instead of into Chapter 7….A laudable sentiment, until one reviews the actual quantitative research, which reveals that only 4 percent of those who filed Chapter 7 could possibly repay some of their unsecured debt in a Chapter 13 filing, according to the House Report.").

[7] As of today, 2003 is the U.S. Census Bureau's most current income statistics available online.  *See* U.S. Census Bureau, *Income – Median Family Income by Family Size, at* http://www.census.gov/hhes/www/income/medincsizeandstate.html.

proceed under chapter 7.  *Id.*  Put yet another way, a debtor can file chapter 7 if his income less expenses each month results in less than $100.  A debtor cannot file chapter 7 if his income less expenses each month results in more than about $167.  If the debtor is left each month with an amount between $100 and $167, that amount multiplied by 60 must be a figure less than 25% of the nonpriority unsecured claims.  *Id.*

Calculating a debtor's nonpriority unsecured claims is not difficult.  The debtor makes this determination in his initial filings.   What requires substantial calculation, however, is determining the debtor's reduced current monthly income.[8]

The Act defines "current monthly income" in § 101(10A):

The term "current monthly income" –

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—

(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income by section 521(a)(I)(B)(ii) or

(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and

---

[8] The Act requires current monthly income to be calculated based on the debtor's actual income for the 6 months preceding the petition date.  The amounts set forth in this order are based on the respective Debtors' Schedule I rather than the 6 months preceding the petition date.  However, there is no indication that this produces a different result in either case.

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10A).

Pursuant to the statutory deductions listed above, a court reduces the debtor's current monthly income by the following eight categories of a debtor's monthly expenses: (1) applicable amounts under IRS national and local standards, (2) applicable "other necessary expenses" listed by the IRS for the relevant area, (3) amounts spent for care and support of elderly, ill, or disabled, (4) costs of administering of the chapter 13 plan, (5) limited expenses for elementary or secondary school education, (6) a possible amount for excess housing and utilities expenses, (7) secured debt payments, and (8) priority claim payments.

## 1. The debtor's applicable monthly expense amounts specified under the National Standards and Local Standards.

The IRS determines local monthly housing and utilities allowances by county.[9]   The allowances vary by county and, within each county, vary based on family size.[10]   Other necessary living expenses, such as food, clothing, housekeeping supplies, and personal care

---

[9] *See* Internal Revenue Service, Dept. of the Treasury, *Housing and Utilities Allowable Living Expenses*, *at* http://www.irs.gov/businesses/small/article/0,,id=104696,00.html (listing county data by state).

[10] The allowances increase by a factor of roughly 1.176 from a two-person family to a three-person family and by a factor of roughly 1.15 from a three-person family to a four or more person family.

products are determined by the National Standard provided by the IRS and are based on gross monthly income and family size.[11]

**2. The debtor's actual monthly expenses for the categories specified by the IRS as "Other Necessary Expenses" for the area in which the debtor resides.**

According to the IRS, "Necessary Expenses are the allowable payments you make to support you and your family's health and welfare and/or the production of income."[12]  These expenses include health insurance, disability insurance, and health savings account deposits for the debtor and his/her spouse or dependents.[13]  11 U.S.C. § 707(b)(2)(A)(ii)(I).  These monthly expenses do not include payments for debts.  Furthermore, the debtor can receive an additional allowance up to 5% of the food and clothing categories (as specified by the IRS's National Standards) if the debtor is able to demonstrate its necessity.

---

[11]  The IRS provides the same expense amounts for all states except for Hawaii and Alaska (due to their unique geographic position, which makes expenses significantly greater in those states).

[12]  *See* http://www.irs.gov/businesses/small/article/0,,id=104598,00.html.  Without further proof that the particular expense is necessary for the health and welfare of you or your family, the IRS generally excludes from "necessary expenses": tuition for private schools, public or private college expenses, charitable contributions, voluntary retirement contributions, payments or unsecured debts such as credit card bills, cable television charges and other similar expenses as necessary living expenses.  *See* Internal Revenue Service, Dept. of the Treasury, *Necessary Expenses, at* http://www.irs.gov/businesses/small/article/0,,id=104598,00.html.  Nonetheless, in certain instances the IRS will allow payments such as: accounting and legal fees, charitable contributions made to tax exempt organizations, child care, court-ordered payments, dependent care expenses, educational expenses, health care expenses, involuntary deductions (i.e. union dues, uniforms, work shoes), life insurance, secured or legally perfected debts, unsecured debts, current taxes, additional telephone services, federal student loans, internet provider expenses, and repayment of loans made for payment of federal taxes.  *See* Internal Revenue Service, Dept. of the Treasury, *Other Expenses (5.15.1.10), at* http://www.irs.gov/irm/part5/ch14s01.html.

[13]  Additionally, "the debtor's monthly expenses shall include the debtor's reasonably necessary expenses to incurred to maintain the safety of the debtor and the family of the debtor from family violence as identified under section 309 of the Family Violence Prevention and Services Act."  11 U.S.C. § 707(b)(2)(A)(ii)(I).

3.  **The continuation of actual expenses reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family who are unable to pay for such expenses.**

The debtor's immediate family includes parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent.  11 U.S.C. § 707(b)(2)(A)(ii)(II).

4.  **The actual administrative expenses of administering a chapter 13 plan for the district in which the debtor resides, up to an amount of 10% of the projected plan payments.**

The actual percentage of the projected plan payments is determined under schedules issued by the Executive Office for the United States Trustee.[14]  11 U.S.C. § 707(b)(2)(A)(ii)(III). Thus, the appropriate percentage is taken from 100% of disposable income over 60 months.

5.  **The actual expenses for each dependent child less than 18 years of age (not to exceed $1,500 per year per child) to attend elementary or secondary school.**

The debtor must provide documentation of the actual expenses (which may be for private or public schools), and an explanation of why they are reasonable and necessary beyond expenses provided for under the National Standards, Local Standards, or Other Necessary Expenses discussed above.  11 U.S.C. § 707(b)(2)(A)(ii)(IV).

6.  **An allowance for actual housing and utilities in excess of the standards for housing and utilities issued by the IRS.**

The debtor must provide documentation of the actual expenses and demonstrate that the expenses are reasonable and necessary.  11 U.S.C. § 707(b)(2)(A)(ii)(V).

---

[14] Traditionally, 10% is used in the Southern District of Texas.

**7.   The debtor's average monthly payments on secured debts.**

This amount is determined by adding together (i) monthly contractual payments to secured creditors for 60 months following the date of filing, and (ii) any additional payments necessary for the debtor to maintain possession of collateral including: his primary residence, motor vehicle, or other property necessary for the support of the debtor or his dependents.  11 U.S.C. § 707(b)(2)(A)(iii)(I)-(II).

**8.   All priority claims—including child support and alimony—calculated as the total amount entitled to priority, divided by 60 months.**

This amount can be taken from the debtor's schedule E, which already includes "alimony, maintenance, or support" as a type of priority claim.  11 U.S.C. § 707(b)(2)(A)(iv).

As stated, these calculations are used to calculate the debtor's current monthly income. Abuse is presumed if the adjusted figure is not less than the lesser of either (i) 25% of the debtor's nonpriority unsecured claims (or $6,000 if that 25% is less than $6,000) or (ii) $10,000. 11 U.S.C. § 707(b)(2)(A)(i).[15]

**Heer Analysis under the Act**

In the present circumstances, the Heers reside in Harris County, Texas.  The Heers filed jointly and have one child.  Their three-person household has a combined gross monthly income of $12,596.  As this is a joint case, there is no non-filing spousal income.  There is also no other monthly income or social security income in this case.  The Heers own two cars.  Their actual monthly expense for health insurance is $303.  The Court used 10% of forecast total payments

---

[15] Analysis of a chapter 7 debtor under the Act's § 707(b) means test requires substantial mathematical calculations. To aid in the process, this Court has developed a spreadsheet program which, given the numbers from the debtor's filing, and considering the variables based on household size, county, etc., can provide mathematical computations including which parties qualify to file an abuse motion, and whether abuse is presumed.  The Court entered the data through this program for the Hills and the Heers, and the results are included herein as "Appendix A."

by the trustee as the forecast chapter 13 trustee fee.  There is no evidence of actual expenses by the Heers for disability insurance, health savings account deposits, violence prevention expenses, support of disabled, ill and elderly, or educational expenses.  The Court did not make a 5% adjustment in the clothing and food allowance.

In total, the Heers have $69,259 in non-priority unsecured claims.  This determination is made using the Debtors' scheduled non-priority unsecured claims.

The Heers have $109,282 in secured debt payments when calculated for 60 months.  The Heers have one home mortgage which would total $66,000 with 60 payments of $1,100.[16]  The Debtors have two cars but own one outright.  Total car payments on the other car would equal $43,365 with 59 payments of $735.  There is no evidence of any other secured debt payments.

The Heers would pay a total of $98,050 in priority debt payments over a 60-month period.  This amount was calculated with the Debtors' current monthly income taxes at $1,600 over 60 months ($96,000), and attorneys' fees of $2,050[17] paid in a lump sum.  There is no evidence of pre-petition priority tax claims, child support or alimony, expenses of operating a business, or any additional priority claims.

The median income calculation is at the heart of the calculations under the new Act's § 707(b) mean test.  Using the Debtors' schedules and statements and the Court's calculations, the Court found that the Debtors had an actual annual income of $75,576 ($6,298 per month) and an applicable annual median income of $48,502.  Allowed monthly expenses and adjustments include housing and utilities at $1,270, standard living expenses at $1,430, additional living

---

[16] The Court estimated the amount of taxes and insurance to remove from the scheduled mortgage payments, and then amortized that amount using an estimated 7.5 percent over 60 months.

[17] Pursuant to General Order 2004-5, $2,050 is the basic fee allowed under fixed fee agreements in the Southern District of Texas.

expenses at $303, transportation at $462, trustee expenses at $137, no 5% adjustment for food and clothing, secured debt payments at $1,823, and priority claim payments/other necessary expenses at $1,634. The Debtors' total allowed monthly expenses total $7,058. These determinations leave no money available for distribution to pre-petition general unsecured creditors. The amount available for such creditors per month would be negative $761. Thus, the amount available to unsecured creditors over a 60-month period would be negative $45,653, clearly leaving zero percent available on unsecured claims.

In considering whether abuse is presumed as to the Heers, the Court must examine the Debtors under § 707(b)(2)(A)(i).[18] The Debtors in this case have a current monthly income of negative $761 when adjusted under the appropriate clauses. As stated, this leaves the Debtors with an adjusted income of negative $45,502 over 60 months. Abuse is only presumed for the Heers under § 707(b)(2)(A)(i) if the adjusted income over 60 months is greater than $10,000. Clearly it is not. Thus, under § 707(b)(2) of the Act, no abuse would be presumed as to the Heers.

### Hill Analysis under the Act

The Hills also reside in Harris County, Texas. They filed the present petition jointly, and have no children in their household. Their two-person household has a combined gross monthly income of $21,540. As this is a joint case, there is no non-filing spousal income. The Hills have no other monthly income or social security income. The Debtors own two cars. Their actual monthly health insurance is $376. There is no evidence of actual monthly expenses for disability insurance, health savings account deposits, violence prevention, support of disabled, ill, and

---

[18] Debtors with current monthly incomes below the relevant state median income for that household size are not subject to the means test. 11 U.S.C. § 707(b)(7). The median income in Texas for a three-person household is $48,502. The Heers' current income at filing was $75,576. Thus, they must be evaluated under § 707(b)(2)'s means test.

elderly, or educational expenses.  The Court made no adjustment for home energy and no 5% upward adjustment in the Debtors' clothing and food allowance.  The Court again used 10% as the forecast trustee percentage.

In total, the Hills have $104,822 in total non-priority unsecured claims.  This amount is determined using the Debtors' scheduled non-priority claims.

The Hills have $144,630 in secured debt payments when calculated over 60 months.  This amount was calculated from the Debtors' home mortgage payments of $1,591 over 60 months ($95,460),[19] $477 for one car over 60 months ($28,620), $725 for the second car over 20 months ($14,500), and $101 over 60 months in additional secured debt ($6,050).

The Hills would pay $537,470 in priority debt payments over 60 months.  This amount was calculated using the Debtors' current income taxes of $5,438 over 60 months ($326,260), child support and alimony of $666 over 60 months ($39,960), attorneys' fees of $2,050 in one lump sum payment, and reasonable and necessary expenses of operating a business of $2,820 over 60 months ($169,200).  There is no evidence of pre-petition priority taxes, pre-petition child support or alimony, or any other priority claims.

The Court calculated the Debtors' actual income at $258,483 and applicable median income at $44,357.  In calculating the median income, the Court used housing and utility expenses of $1,080, standard living expenses of $1,280, special living expenses of $376, transportation expenses of $462, trustee expenses of $956, secured debt payments of $2,410, and priority claim payments/other necessary expenses of $8,958.  The Hills' total allowed expenses totaled $15,522.

---

[19] Unlike the Heers, the Hills scheduled their mortgage payments *excluding* taxes and insurance.  The Court therefore used the scheduled figure without reducing it by estimated taxes and insurance.

These calculations leave $6,018 available for distribution to pre-petition general unsecured creditors per month, or $361,104 over 60 months. The Court calculated the percentage available on unsecured claims as 344.49%. If the Court finds that income less expenses and adjustments multiplied by 60 is greater than $10,000, then the Hills are presumed abusive under the § 707(b)(2). With a total adjusted income of $361,104 over 60 months, the Hills would be presumed abusive under the Act.

### Court Discretion in the Act

While the Act adds highly specific calculations to determine whether abuse is presumed under § 707(b), the revised statute nonetheless maintains discretionary provisions. Specifically, a court's discretion under the current § 707(b) is maintained under the Act, through incorporation of the "bad faith" and "the totality of the circumstances" language developed under the current law. Section 707(b)(3) of the Act states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A)   whether the debtor filed the petition in *bad faith*; or
>
> (B)   the *totality of the circumstances* (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3) (emphasis added). Thus, a court can find that "the granting of relief would be an abuse of the provisions of this chapter" even when a debtor is not presumed abusive under a § 707(b)(2) analysis. 11 U.S.C. § 707(b)(1), (3). *See, e.g., In re Rathbun*, 309 B.R. at 904; *In re Krohn*, 886 F.2d at 126-27; *In re Walton*, 866 F.2d at 983; *In re Koch*, 109 F.3d at 1288.

With respect to the Hills, the Court would not consider § 707(b)(3) since abuse is presumed as to the Hills under § 707(b)(2). With respect to the Heers, however, abuse is not

presumed under the Court's § 707(b)(2) calculations.  As stated above, bad faith is not a concern as to the Heers—none is alleged and none is apparent to the Court.  Thus, the only matter of concern in § 707(b)(3) remains evaluating the Heers' financial situation under the totality of the circumstances to determine whether it demonstrates abuse.  As discussed, the totality of the circumstances is a primary consideration under the current law.  The Act preserves such consideration, but only after directing the court to consider a detailed means test.  It is therefore unclear whether the outcome of the means test in § 707(b)(2) is considered when viewing the totality of the circumstances under § 707(b)(3).  This Court need not conclude the effect of the lack of presumed abuse for the Heers on the totality of the circumstances test under the Act.

**Conclusion**

Many of the changes in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 are significant and unpredictable.[20]  The means test of § 707(b)(2) has been considered significant in predictions that the Act will force many debtors into chapter 13 who would otherwise file a chapter 7.  Highly oversimplified, chapter 13 requires 36-60 months of payments rather than a nearly immediate discharge and a fresh start in a chapter 7.  Yet, if the present cases

---

[20] Three significant changes to chapter 13 include changes to "lien stripping" provisions, limits on chapter 13 discharges, and provisions likely to delay and otherwise affect payment of attorneys' fees.  While likely an important incentive to many debtors choosing to file a chapter 13, some "lien stripping" provisions are removed from chapter 13 under the new Act.  It is quite common, from this Court's experience, that a debtor's car note is (often substantially) higher than the value of the vehicle.  Under the current law, a chapter 13 debtor can use § 506(a) to bifurcate the creditor's claim into a secured claim up to the value of the vehicle and an unsecured claim on the remainder.  Practically speaking, this usually results in full payment of the secured portion and payment of only a much smaller percentage on the unsecured portion (at whatever distribution the debtor is to pay pre-petition general unsecured claims).  However, in revised § 1325(a), § 506 no longer applies to purchase money secured debts on motor vehicles that are less than 910 days old (about 2 ½ years).  This creates the possibility that a prospective chapter 13 debtor would instead choose to file under chapter 7.

By way of example: a person considers filing chapter 7 or chapter 13.  Her distribution on pre-petition general unsecured claims is calculated to be 10% if she filed a chapter 13.  Two years previously, she signed a note for a car and, at the time she considers filing, she owes $13,000 on the note but her car is only worth $10,000.  Under the current law, she can file a chapter 13 and pay $10,000 for the value of the claim up to the value of the car and 10% on the remaining $3,000, or $300.  Under a chapter 7, she can relinquish the car and the note with it, or enter into a reaffirmation agreement to keep the car and pay the $13,000 as previously contracted before she filed bankruptcy.  She might choose to file a chapter 13 because she can keep the car for $10,300 rather than $13,000.  Under the Act her options change.  She can file a chapter 13 and keep the car as discussed under the current law, but now she must pay 100% on the $13,000.  She would still pay $13,000 if she filed a chapter 7 and reaffirmed the debt, but she would receive a quick discharge of all general unsecured pre-petition claims.

Another change under the Act surrounds discharge provisions.  Specifically, chapter 13's "super-discharge" provisions are revised so as to no longer discharge debts arising from fraud and embezzlement.  Under the current law, debts arising from fraud and embezzlement are excepted from discharge in a chapter 7 (under subsections of § 523, including (a)(2) and (4)), but can be discharged in a chapter 13.  These, along with certain other debts excepted from discharge under § 523, are made inapplicable to a chapter 13 under current law through § 1328.  Known as a "super-discharge," this result provides an incentive to file under chapter 13 if a prospective debtor has a fraud or embezzlement claim against him.  The Act alters this effect through reducing the debts excepted from discharge under § 1328 by adding language to § 1328(a)(2) and adding subsection (a)(4).

By way of example, a person is sued in state court for fraud and embezzlement by his former partner.  He loses and a substantial judgment is entered against him.  He now considers filing bankruptcy.  If he is eligible to file a chapter 7 or a chapter 13, he could today file a chapter 13 and discharge his remaining state court judgment.  Filing a chapter 7 would discharge all other pre-petition general unsecured debts, but not the fraud and embezzlement claim that is excepted from chapter 7 discharge.  Under the new Act, however, he no longer receives a discharge for the judgment under a chapter 13.  He may nonetheless decide to file a chapter 13 over a chapter 7, but this incentive is lost.

A third significant change to chapter 13 under the Act surrounds attorneys' fees.  The Act makes it more difficult to receive payment for attorneys' fees in a chapter 13.  The interplay between §§ 1325 and 1326 of the Act is likely to result in deferred payments on attorneys' fees over a longer period of time, thereby substantially increasing the likelihood that attorneys will not be paid in full.

before the Court are any indication, the Act will have no effect on the vast majority of chapter 7

filers.

The Debtors may not remain in chapter 7. Separate orders will be entered in each case.

Signed on August 3, 2005.

_____
MARVIN ISGUR
United States Bankruptcy Judge

# APPENDIX  A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

In re:                                              §
                                                    §         Case No:
Mark A. Hill & Barbara C. Hill                      §         04-42452
Debtor(s).                                          §

### Determination of who may file an abuse motion:

| | | | |
|---|---|---|---|
| County | Harris ▼ | | |
| Household size | | | 2 |
| Gross income (without non-filing spouse) per | Month ▼ | $21,540 | $21,540 |
| Non-filing spouse income per | Month ▼ | $0 | $0 |
| Other monthly income | | | $0 |
| Monthly social security income | | | $0 |

**ANY PARTY MAY FILE ABUSE MOTION**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

In re:                                      §
                                            §        Case No:
Mark A. Hill & Barbara C. Hill              §        04-42452
Debtor(s).                                  §

## Determination of abuse:

| | |
|---|---|
| Number of cars | 2 |
| Actual health insurance (monthly) | $376.00 |
| Actual disability insurance (monthly) | $0.00 |
| Actual health savings account deposits (monthly) | $0.00 |
| Actual violence prevention expenses (monthly) | ▮▮▮▮ |
| Less included debt | $0.00 |
| Actual expenses for support of disabled, ill and elderly (monthly) | $0.00 |
| Forecast trustee percentage | 10.00% |
| Actual educational expenses not to exceed $125 per child per month (monthly) | $0.00 |
| Home energy adjustment (monthly) | $0.00 |
| 5% upward adjustment (yes or no) in clothing and food allowance | no |
| Total non-priority unsecured claims | $104,822 |

Amount must be maintained in confidence

31



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

In re:                                          §
Mark A. Hill & Barbara C. Hill                  §        Case No:
Debtor(s).                                      §        04-42452
                                                §

| SECURED DEBT PAYMENTS (OVER 60 MONTHS) | Monthly Amount | Months Remaining | |
|---|---|---|---|
| Home (first mortgage) | $1,591 | 60 | $95,460 |
| Home arrearages | $0 | 0 | $0 |
| Home (second mortgage) | $0 | 0 | $0 |
| Car One | $477 | 60 | $28,620 |
| Car One arrearages | $0 | 0 | $0 |
| Car Two | $725 | 20 | $14,500 |
| Car Two arrearages | $0 | 0 | $0 |
| Other secured debt payments | $101 | 60 | $6,050 |
| | | | |
| TOTAL OVER 60 MONTHS | | | $144,630 |



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

In re:                                              §
                                                    §     Case No:
Mark A. Hill & Barbara C. Hill                      §     04-42452
Debtor(s).                                          §

## PRIORITY DEBT AND OTHER NECESSARY EXPENSES PER IRS

| | Monthly amount | Months remaining | |
|---|---|---|---|
| Income taxes--current | $5,438 | 60 | $326,260 |
| Taxes -- pre-petition priority | $0 | 0 | $0 |
| Child support and alimony -current | $666 | 60 | $39,960 |
| Child support and alimony--pre-petition priority | $0 | 0 | $0 |
| Attorneys fees | $2,050 | 1 | $2,050 |
| Reasonable and necessary expenses of operating business | $2,820 | 60 | $169,200 |
| Other priority claims | $0 | 0 | $0 |
| TOTAL OVER 60 MONTHS | | | $537,470 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS



In re:                                        §
                                              §          Case No:
Mark A. Hill & Barbara C. Hill                §          04-42452
Debtor(s).                                    §

**SUBSTANTIAL ABUSE PRESUMED**

*MEDIAN INCOME SUBSTANTIAL ABUSE CALCULATION:*
Income and adjustments:

| | | |
|---|---|---|
| Applicable Median Income | $44,357 | |
| Actual Income | $258,480 | |
| Less social security income | $0 | |
| Available income (Debtor only) | $258,480 | $21,540 |
| Available income (with non-filing spouse) | $258,480 | $21,540 |

*Expenses and adjustments:*

| | |
|---|---|
| Housing and utilities | $1,080 |
| Living Expenses (Standard) | $1,280 |
| Additional Living Expenses (special) | $376 |
| Transportation | $462 |
| Trustee expenses | $955 |
| Optional 5% adjustment for food and clothing | $0 |
| Secured Debt Payments (monthly) | $2,410 |
| Priority claim payments | $8,958 |
| TOTAL ALLOWED EXPENSES | $15,522 |

| | |
|---|---|
| Available for creditors per month | $6,018 |
| Available for creditors over 60 months | $361,090 |
| Percentage available on unsecured claims | 344.48% |
| 707(b)(2)(A)(i)(I) calculation | $26,206 |
| 707(b)(2)(A)(i)(II) amount | $10,000 |
| Lesser amount equals | $10,000 |



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

In re:                                         §
                                               §                    Case No:
Michael T. Heer & Maria D. Heer                §                    04-42130
Debtor(s).                                     §

*Determination of who may
file an abuse motion:*

| | | | | |
|---|---|---|---|---|
| County | Harris | ▼ | | |
| Household size | | | | 3 |
| Gross income (without non-filing spouse) per | Month | ▼ | $6,298 | $6,298 |
| Non-filing spouse income per | Month | ▼ | $0 | $0 |
| Other monthly income | | | | $0 |
| Monthly social security income | | | | $0 |

**ANY PARTY MAY FILE ABUSE MOTION**

35

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS



| | | |
|---|---|---|
| In re: | § | |
| | § | Case No: |
| Michael T. Heer & Maria D. Heer | § | 04-42130 |
| Debtor(s). | § | |

### Determination of abuse:

| | |
|---|---|
| Number of cars | 2 |
| Actual health insurance (monthly) | $303.00 |
| Actual disability insurance (monthly) | $0.00 |
| Actual health savings account deposits (monthly) | $0.00 |
| Actual violence prevention expenses (monthly) | ███ |
| Less included debt | $0.00 |
| Actual expenses for support of disabled, ill and elderly (monthly) | $0.00 |
| Forecast trustee percentage | 10.00% |
| Actual educational expenses not to exceed $125 per child per month (monthly) | $0.00 |
| Home energy adjustment (monthly) | $0.00 |
| 5% upward adjustment (yes or no) in clothing and food allowance | no ▼ |
| Total non-priority unsecured claims | $69,259 |

Amount must be maintained in confidence

36

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

In re: §
§
Michael T. Heer & Maria D. Heer §
Debtor(s). §

Case No:
04-42130

| SECURED DEBT PAYMENTS (OVER 60 MONTHS) | Monthly Amount | Months Remaining | |
|---|---|---|---|
| Home (first mortgage) | $1,100 | 60 | $66,000 |
| Home arrearages | $0 | 0 | $0 |
| Home (second mortgage) | $0 | 0 | $0 |
| Car One | $735 | 59 | $43,365 |
| Car One arrearages | $0 | 0 | $0 |
| Car Two | $0 | 0 | $0 |
| Car Two arrearages | $0 | 0 | $0 |
| Other secured debt payments | $0 | 0 | $0 |

TOTAL OVER 60 MONTHS                     $109,365

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS



In re:                                        §
                                              §        Case No:
Michael T. Heer & Maria D. Heer               §        04-42130
Debtor(s).                                    §

### PRIORITY DEBT AND OTHER NECESSARY EXPENSES PER IRS

| | Monthly amount | Months remaining | |
|---|---|---|---|
| Income taxes--current | $1,600 | 60 | $96,000 |
| Taxes -- pre-petition priority | $0 | 0 | $0 |
| Child support and alimony -current | $0 | 0 | $0 |
| Child support and alimony--pre-petition priority | $0 | 0 | $0 |
| Attorneys fees | $2,050 | 1 | $2,050 |
| Reasonable and necessary expenses of operating business | $0 | 0 | $0 |
| Other priority claims | $0 | 0 | $0 |
| TOTAL OVER 60 MONTHS | | | $98,050 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS



| | | |
|---|---|---|
| In re: | § | |
| | § | Case No: |
| Michael T. Heer & Maria D. Heer | § | 04-42130 |
| Debtor(s). | § | |

**NO SUBSTANTIAL ABUSE PRESUMED**

*MEDIAN INCOME SUBSTANTIAL ABUSE CALCULATION:*

Income and adjustments:

| | | |
|---|---|---|
| Applicable Median Income | $48,502 | |
| Actual Income | $75,576 | |
| Less social security income | $0 | |
| Available income (Debtor only) | $75,576 | $6,298 |
| Available income (with non-filing spouse) | $75,576 | $6,298 |

*Expenses and adjustments:*

| | |
|---|---|
| Housing and utilities | $1,270 |
| Living Expenses (Standard) | $1,430 |
| Additional Living Expenses (special) | $303 |
| Transportation | $462 |
| Trustee expenses | $137 |
| Optional 5% adjustment for food and clothing | $0 |
| Secured Debt Payments (monthly) | $1,823 |
| Priority claim payments | $1,634 |
| *TOTAL ALLOWED EXPENSES* | $7,059 |

| | |
|---|---|
| Available for creditors per month | ($761) |
| Available for creditors over 60 months | ($45,653) |
| Percentage available on unsecured claims | 0.00% |
| 707(b)(2)(A)(i)(I) calculation | $17,315 |
| 707(b)(2)(A)(i)(II) amount | $10,000 |
| Lesser amount equals | $10,000 |